IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IN RE:<br><br>SUNCREST, L.L.C.,<br><br>Debtor. | Case No. 08-22302-WTT<br>Chapter 7 |
| PHILIP G. JONES, in his capacity as<br>Chapter 7 Trustee of Suncrest, L.L.C.,<br><br>Plaintiff,<br><br>v.<br><br>BRUCE R. BAIRD,<br><br>Defendant. | Adv. No. 10-02283 |

ORDER DETERMINING THAT SPECIFIED FACTS ARE NOT
GENUINELY AT ISSUE IN THIS ADVERSARY PROCEEDING

This matter comes before the Court pursuant to the Motion for Partial Summary Judgment filed by Philip G. Jones ("Trustee"), Plaintiff, and the Motion for Partial Summary Judgment filed by Bruce R. Baird ("Baird"), Defendant. The Court has scheduled oral argument on both motions on September 28, 2011. Upon review of the pleadings and papers on file in this case, the Court has determined that certain facts are not genuinely in dispute and should be treated as established for the purposes of this adversary proceeding. The Court further believes that advising the parties of those facts prior to the September 28, 2011, hearing will be of assistance to the parties. Accordingly,

IT IS HEREBY ORDERED that pursuant to Federal Rule of Civil Procedure 56(g), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056, the following facts are not genuinely in dispute and are deemed established in this action:



1. SunCrest, L.L.C. ("Debtor"), filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on April 11, 2008 (the "Petition Date").

2. Debtor's bankruptcy case was converted to one under Chapter 7 of the Bankruptcy Code pursuant to an order entered on December 3, 2008.

3. The Trustee was appointed as the trustee in Debtor's bankruptcy case on December 4, 2008.

4. After his appointment, the Trustee engaged professionals on behalf of Debtor's estate, including Parsons Kinghorn Harris; LECG, LLC; and Berkeley Research Group, LLC.

5. After his appointment, the Trustee took custody of business records of Debtor, including those provided by Debtor's former management company, Westerra Management, LLC doing business as TerraBrook ("Westerra").

6. At the Trustee's direction, the Trustee's professionals in this case reviewed Debtor's business records and analyzed potential claims for preferential transfers.

7. On April 8, 2010, the Trustee commenced this adversary proceeding against Baird and alleged in the Complaint that Baird received transfers in the amount of $70,500.00 (the "Transfers") from Debtor that are avoidable as preferences under Section 547 of the Bankruptcy Code.

8. On December 6, 2010, Baird filed his Answer to the Complaint.

9. The Transfers constitute a transfer of an interest of Debtor in property.

10. Debtor's books and business records indicate that the Transfers and other transfers to Baird from and after October 3, 2007, were paid by Debtor to Baird (i.e., "cleared"

the bank) on the following dates, in the following amounts, and by the following methods:

| Payment Date | Payment Amount | Payment Method |
| --- | --- | --- |
| October 3, 2007 | $13,500.00 | Check |
| October 31, 2007 | $13,500.00 | Check |
| November 5, 2007 | $13,500.00 | Check |
| November 19, 2007 | $13,500.00 | Check |
| December 3, 2007 | $13,500.00 | Check |
| December 18, 2007 | $13,500.00 | Check |
| January 8, 2008 | $13,500.00 | Check |
| January 15, 2008 | $13,500.00 | Check |
| February 4, 2008 | $13,500.00 | Check |
| February 19, 2008* | $13,500.00 | Check |
| February 28, 2008* | $13,500.00 | Check |
| April 8, 2008 | $22,500.00 | Wire Transfer |
| April 10, 2008 | $ 7,500.00 | Wire Transfer |
| **April 11, 2008** | **PETITION DATE** | |

11. The Transfers were paid to Baird, who was a creditor of Debtor at the time each of the Transfers was made.

12. Pursuant to Section 547(f) of the Bankruptcy Code, Debtor is presumed to have been insolvent on and during the 90 days immediately preceding the Petition Date.

13. The Transfers were made while the Debtor was insolvent.

14. The Transfers were made to Baird during the 90-day period preceding the Petition Date.

---

* The Court notes that a similar table is found in pleadings filed by both the Trustee and Baird that reports these transfers as occurring in 2007. See Docket No. 19, at 7; Docket No. 20, at 4; Docket No. 21, at 9; Docket No. 22, at 4; Docket No. 25, at 9. Based on other undisputed facts presented by the parties, the Court finds that these transfers actually occurred in 2008, thus making them among the transfers sought to be avoided by the Trustee. If the parties disagree with the Court's finding of this fact, they should so inform the Court at the September 28, 2011, hearing.

15. Based on the Trustee's review of the claims filed in this case, including, without limitation, Zions Bank's $7,500,000 claim that has been approved and allowed by the Court, the potential recovery for the estate on pending avoidance actions, and other potential assets and liabilities of the estate, the allowed general unsecured claims against Debtor's Chapter 7 estate will far exceed funds available for distribution.

16. The Transfers permitted Baird to receive more than he would have received in this case if the Transfers had not been made and if his distribution from this estate were limited to his pro rata share based on allowed unsecured claims under Section 726 of the Bankruptcy Code.

17. On September 17, 2007, Debtor and Baird entered into a consulting services agreement (the "First Consulting Services Agreement").

18. Pursuant to the express terms of the First Consulting Services Agreement, Baird would be paid in arrears for the consulting services he would provide to Debtor.

19. Debtor paid Baird $13,500.00 by check on approximately a semi-monthly basis from October 2007 through February 2008.

20. On or about January 29, 2008, Baird received a check from Debtor in the amount of $13,500.00. On or about February 14, 2008, Baird received a check from the Debtor in the amount of $13,500.00. On or about February 26, 2008, Baird received a check from the Debtor in the amount of $13,500.00 (collectively, the "Check Transfers").

21. On or about March 21, 2008, Baird and Debtor executed a second consulting services

agreement (the "Second Consulting Services Agreement"), which began as of March 10, 2008, and which the Trustee received from Debtor or Westerra as part of Debtor's books and business records.

22. The Second Consulting Services Agreement increased the compensation payable to Baird from $13,500.00 semi-monthly, to $7,500.00 per week – an increase of approximately $5,589.00 per month.

23. The Second Consulting Services Agreement also changed the frequency, or periodicity, of payment from Debtor to Baird.

24. On April 7, 2008, Baird sent an e-mail to Debtor requesting payment, by wire, for three weeks of prior service.

25. According to Debtor's books and business records, Debtor transferred $22,500.00 to Baird on April 8, 2008, via wire transfer (the "April 8, 2008 Wire Transfer").

26. According to Debtor's books and business records, Debtor transferred $7,500.00 to Baird on April 10, 2008, via wire transfer (the "April 10, 2008 Wire Transfer").

27. The April 8, 2008 Wire Transfer and the April 10, 2008 Wire Transfer (collectively, the "Wire Transfers") were made from funds of Debtor.

28. Baird has not filed a claim in the bankruptcy case.

29. The Trustee is unaware of any services or other new value provided by Baird after the Wire Transfers for which Baird has not been paid in full.

30. Near the end of the ninety days prior to the Petition Date, Baird was aware that "Debtor had insufficient funds in its direct accounts, that its parent was unlikely to advance any more funds and that the prospect of a sale that would have paid all debts

was unlikely."

31. Near the end of the 90 days prior to the Petition Date, Baird "knew that Debtor was not paying a large share of its debts."

32. Near the end of the First Consulting Services Agreement (i.e., February 2008 or early March 2008), the Debtor began working on a potential bankruptcy filing. Baird "worked closely and extensively during this time with SunCrest's bankruptcy counsel."

33. As the First Consulting Services Agreement was about to expire, Debtor's management requested Baird to continue to provide management and consulting services which then also included preparation for the bankruptcy petition.

34. Prior to September 2007, Baird and his law firm's billing practices with Debtor involved sending statements for services billed on an hourly basis to Debtor and then for Debtor to pay the statements. Under the First Consulting Services Agreement and the Second Consulting Services Agreement no invoicing was required.

35. Baird became aware in late-January or early-February of 2008 that Debtor was considering a bankruptcy filing if an expected sale did not occur sometime soon.

36. Sometime in early March 2008 Baird was advised that Debtor had retained Vinson & Elkin, and Baird was asked for a reference for local bankruptcy counsel. Baird recommended the law firm of McKay, Burton & Thurman as local bankruptcy counsel for Debtor.

37. During the 90 days prior to the Petition Date, Baird assisted in preparing the bankruptcy petition, schedules, and First Day Pleadings as well as preparing First

Day testimony.

38. The initial schedules filed by Debtor on April 11, 2008, *at Docket No. 2*, list assets totaling $54,057,921.96 and liabilities totaling $55,329,651.10.

The Court reserves the right to make additional findings of facts that are not in material dispute following the September 28, 2011, oral argument.

Dated this 14th day of September, 2011.

BY THE COURT:

JUDGE TERRENCE L. MICHAEL
UNITED STATES BANKRUPTCY COURT

6200.4